In re WEDTECH CORP., f/k/a Welbilt Electronics Die Corp., Debtor.

WEDTECH CORP., f/k/a Welbilt Electronics Die Corp., Plaintiff,

v.

KMG MAIN HURDMAN, Defendant.

WEDTECH CORP., f/k/a Welbilt Electronics Die Corp., Plaintiff,

v.

TOUCHE ROSS & CO., Defendant.

Bankruptcy No. 86 B 1236 (HCB).
Adv. Nos. 87–5342A, 87–5341A.
Nos. 87 CIV 7139 (LBS), 87 CIV 7220 (LBS).

United States District Court,
S.D. New York.

Dec. 16, 1987.

Pollner, Mezan, Stolzberg, Berger & Glass, P.C., New York City (Richard S. Mezan, John F. Lang, John H. Reichman, of counsel), for plaintiff Wedtech.

Angel & Frankel, New York City (Willkie Farr & Gallagher, Robert J. Kheel, of counsel), for defendant KMG Main Hurdman.

Richard I. Miller, Peat Marwick Main & Co., New York City (Shea & Gould, Leon P. Gold, of counsel), for defendant Touche Ross & Co.

Stroock & Stroock & Lavan, New York City (Brian M. Cogan, Roland Riopelle, William Rome, of counsel), for the Official Committee of Unsecured Creditors of Wedtech Corp.

## OPINION

SAND, District Judge.

In this adversary proceeding by debtor in bankruptcy Wedtech Corp. against its former accountants, KMG Main Hurdman and Touche Ross & Co., defendant accounting firms have moved to dismiss. For the reasons set forth below, the motions to dismiss are denied without prejudice to motions after discovery.

As in *Cenco Inc. v. Seidman & Seidman,* 686 F.2d 449, 453 (7th Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982), the allegations of the debtor here, although brought under many different theories, all sound in malpractice. We find that, as alleged against an accountant, claims of fraud, malpractice, aiding and abetting a fraud [we do not here decide whether or not such a cause of action exists under New York law], fraudulent transfer, breach of fiduciary duty, unjust enrichment, and monies had and received, allege what is essentially "a single form of wrongdoing under different names." *Id.* For purposes of this motion to dismiss, we will therefore consider this to be in essence an action in malpractice.

The accountants argue that because the former top management of Wedtech was involved in the misconduct of which Wedtech Corp. here complains, Wedtech has unclean hands and thus has no standing to assert claims against its former accountants. Wedtech asserts that its former managers were acting in their own personal interest, and not in the interests of the corporation, and that their acts thus do not bind Wedtech.

At issue is the applicability of the "adverse interest" exception to the general rule that knowledge acquired by an agent acting within the scope of his agency is imputed to his principal, and that the principal is bound by such knowledge whether or not the information is actually communicated to it. "This exception provides that when an agent is engaged in a scheme to defraud his principal, either for his own benefit or that of a third person, the presumption that knowledge held by the agent was disclosed to the principal fails because he cannot be presumed to have disclosed that which would expose and defeat his fraudulent purpose." *Center v. Hampton Affiliates, Inc.,* 66 N.Y.2d 782, 497 N.Y.S. 2d 898, 899–900, 488 N.E.2d 828, 829–30 (1985).

Upon visiting this question recently, the New York Court of Appeals stated that

"[t]o come within the exception, the agent must have totally abandoned his principal's interests and be acting entirely for his own or another's purposes. It cannot be invoked merely because he has a conflict or because he is not acting primarily for his principal." *Id.*

Wedtech's complaints against the two accounting firms differ in the characterization of the misconduct they attribute to Wedtech's former managers; the accountants suggest that in the interval between the preparation of the two complaints, Wedtech became sensitive to the possible effect of pleadings that allege managerial wrongdoing that can be construed as intended to benefit the corporation.

It is possible that, in the end, it will be found that management was indeed acting in whole or in part for the "benefit" of Wedtech, in which case the "adverse interest" exception would not apply, and Wedtech would be estopped from bringing claims against its accountants. *See Cenco, supra,* 686 F.2d at 456. (The relevant issue is short term benefit or detriment to the corporation, not any detriment to the corporation resulting from the unmasking of the fraud). *Security America Corp. v. Schacht,* No. 82–C–2132 (N.D.Ill., E.D. Jan. 31, 1983) (citing *Cenco, supra,* 686 F.2d at 456).

However, it is also possible that the misconduct was entirely oriented toward the ultimate bleeding of Wedtech by its corrupt managers, in which case the "adverse interest" exception would be operative. *See Schacht v. Brown,* 711 F.2d 1343, 1347–48 (7th Cir.), *cert. denied,* 464 U.S. 1002, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983). On this record the Court cannot sustain the accountants' position that the knowledge and conduct of Wedtech's former managers must be legally imputed to Wedtech and thus prevent Wedtech from asserting claims against them. *See Bloor v. Dansker (In re Investors Funding Corp.),* 523 F.Supp. 533, 541 (S.D.N.Y.1980).

 Defendant KMG Main Hurdman also asserts a statute of limitations defense, arguing that malpractice claims as to any professional services rendered to Wedtech prior to December 15, 1983, three years before Wedtech filed its petition for bankruptcy, are untimely. Wedtech argues that a contract theory rather than a negligence theory of malpractice should apply, and that the statute of limitations should thus be six years rather than three. In the alternative, it argues, if a three-year limitation applies, it should be tolled under the "continuous treatment" theory.

Looking solely to the complaint, we do not believe that a contract theory applies, because nothing alleged here suggests that KMG Main Hurdman guaranteed a specific result that it failed to produce. Rather it undertook to exercise due care in rendering its professional accounting services to Wedtech. *See Wilkin v. Dana R. Pickup & Co.,* 74 Misc.2d 1025, 347 N.Y.S.2d 122, 125 (Sup.Ct.Allegany Co.1973).

 With respect to the "continuous treatment" theory, Wedtech alleges that KMG Main Hurdman was engaged by Wedtech through April 1985, and provided "cold comfort" letters through August 1986. The "continuous treatment" or "continuous representation" theory has been extended from medical and legal malpractice to accounting malpractice in New York. *Wilkin, supra,* 347 N.Y.S.2d at 125. The question is whether there was continuous representation as to a matter rather than "mere continuity of a general professional relationship." *Tool v. Boutelle,* 91 Misc.2d 464, 398 N.Y.S.2d 128, 130 (Sup.Ct.Albany Co.1977); *see also Yandel v. Loeb & Troper,* 84 A.D.2d 710, 443 N.Y.S.2d 959 (1981).

We find that there are disputed factual issues as to the existence of an interrelationship between the earlier and later services provided by KMG Main Hurdman, and thus we cannot decide as a matter of law whether the "continuous representation" theory applies here. *See Cohen v. Goodfriend,* 642 F.Supp. 95, 102 (E.D.N.Y. 1986); *Bloor v. Dansker, supra,* 523 F.Supp. at 544–48.

The motions to dismiss are denied without prejudice to the making of motions after discovery.

SO ORDERED.