**In re WEDTECH SECURITIES LITIGATION.**

**In re WEDTECH CORPORATION, f/k/a Welbilt Electronic Die Corporation, Debtor.**

**CEPA CONSULTING, LTD., as Trustee of the Liquidating Trust of Wedtech Corp., Plaintiff,**

**v.**

**KING MAIN HURDMAN and Peat Marwick Main & Co. as Successor of Certain Interests of KMG Main Hurdman, Defendants.**

**CEPA CONSULTING, LTD., as Trustee of the Liquidating Trust of Wedtech Corp., Plaintiff,**

**v.**

**TOUCHE ROSS & CO., Defendant.**

**Bankruptcy No. 86–B–12366 (HCB).**
**Nos. 87 Civ. 7139 (LBS),**
**87 Civ. 7220 (LBS).**

United States District Court,
S.D. New York.

Jan. 30, 1992.

As Amended May 11, 1992.

. . . .

**6**

Stroock & Stroock & Lavan, New York City (Brian M. Cogan, Stuart M. Riback, of counsel), for plaintiff.

Willkie Farr & Gallagher, New York City (Richard L. Klein, James D. Goldsmith, of counsel), for defendants KMG Main Hurdman and Peat Marwick Main & Co.

Arnold & Porter, New York City (Stephen M. Sacks, Craig Newman, of counsel), for defendant Touche Ross & Co.

SAND, District Judge.

This action is one piece of the complex litigation surrounding the activities of the now bankrupt Wedtech Corporation. Here, the trustee in bankruptcy, CEPA Consulting, has brought suit against Wedtech's former accountants, KMG Main Hurdman and Peat Marwick Main & Co. (hereinafter "Main Hurdman") and Touche Ross & Co. for various claims of malpractice.

In 1987, the defendants moved to dismiss the action, claiming that because the former top officers of Wedtech were involved in the conduct alleged in the complaints, their guilt was imputed to the company itself. Defendants argued that the company's own "unclean hands" thus precluded it from bringing the action. At issue was whether these officers were acting with such "adverse interest" to Wedtech that their actions and guilt could not be imputed to the company. At that time, we found that the state of the record did not permit us to resolve whether the "adverse interest" exception to imputation was applicable to the case. We denied the motion to dismiss without prejudice to the making of motions after discovery. *In re Wedtech Corp.*, 81 B.R. 240, 242 (S.D.N.Y.1987).

With discovery completed, defendants have now moved for summary judgement pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has cross-moved for leave to file a second amended complaint against the defendants. Plaintiff seeks to add claims for fraudulent transfer and aiding and abetting breach of fiduciary duty against Main Hurdman, and to add claims for fraud, aiding and abetting fraud, and aiding and abetting breach of fiduciary duty against Touche Ross. For the reasons discussed below, defendants' motions for summary judgment and plaintiff's cross-motion are all denied.

## DISCUSSION

Summary judgment is appropriate only where the moving papers and affidavits

submitted by the parties "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The appropriate inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202. The moving party has the burden of showing the absence of a genuine issue as to any material fact, and the Court must view the evidence in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

### Standing of the Trustee

After submission of defendants' original moving papers in this action, the Second Circuit issued an opinion in *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir.1991). In *Wagoner*, the trustee for a bankrupt company (HMK)'s estate attempted to assert claims against a third party, Shearson, for allegedly manipulating the company's president, Kirschner, into excessively speculative trading, resulting in losses for the company. The trustee also accused Shearson of "churning" the company's accounts. *Wagoner*, 944 F.2d at 117. The company's president, Kirschner, was also its sole stockholder, and director, and he controlled all of its trading and business activities. *Id.* at 116. Prior to the trustee's action, company noteholders had already brought suit directly against Shearson. *Id.* at 117.

While noting that the trustee did not contend that he was asserting the claims of the noteholders, the Court decided nevertheless to "briefly explore" when a trustee may assert claims on behalf of the corporation's creditors as opposed to those of the corporation itself. *Id.* at 118. The Court then went on to determine which types of claims belonged to the corporation and which belonged to its noteholders and other creditors. The Court concluded that the trustee had standing to bring the churning claim, because the corporation's pre-petition would have had standing to make such a claim. *Id.* at 119. The trustee then alleged that the conduct of Shearson resulted in the improper investment of trust funds of clients of the company and of the company. *Id.* The Court first held that to the extent that the claim alleged money damages to the company's clients, it was a creditors' claim for which the trustee had no standing. *Id.*

The Court then held that to the extent that the claim alleged damages to the company itself, "it is uncontested that HMK's sole stockholder and decisionmaker, Kirschner, not only knew of the bad investments, but actively forwarded them. A claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation." *Id.* at 120. It is this part of the holding that is most relevant to the present case.

Defendants argue that *Wagoner* is controlling here. They contend that the claims that plaintiff is attempting to assert are actually creditors' claims. Therefore, under *Wagoner*, plaintiff lacks standing, and the action must be dismissed. *See* Main Hurdman Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiff's Cross-motion for Leave to File a Second Amended Complaint, at 7–10 (hereinafter "MH Reply Mem.").

■ It is true, as defendants allege, that plaintiff's own view of its claims appears somewhat confused. It refers to itself repeatedly as the creditors' representative. Memorandum of Law of Plaintiff CEPA Consulting, Ltd. in Opposition to Motions for Summary Judgment and in Support of Cross-motions to Amend Complaints, at 57, 58, 60, 62 (hereinafter "Plaintiff's Mem."). However, in a footnote it asserts that it is "not prosecuting claims of creditors," only that the creditors are ultimate beneficiaries of any claim for damages sustained by the estate. Plaintiff's Mem. at 66 n. 21. *Wagoner* demonstrated that a party's own description of its claims, however, is not con-

trolling. Thus, while plaintiff's own confusion is not helpful, we will not rely upon its characterization of the claims.

In *Wagoner,* the company officer involved in the misconduct was also its "sole stockholder and decision-maker," *Wagoner,* 944 F.2d at 120, and the Court assumed that his guilt could be imputed to the corporation. Once this corporate guilt was assumed, it followed that the corporation could not have been damaged, but instead was a "sharer in common liability" with the third party, Shearson. *Id.* at 120 (quoting *In re Petroleum Corp.,* 417 F.2d 929, 935 (8th Cir.1969)). Therefore, these damage claims belonged to the creditors.

■ In the present case, the question of whether the guilt of the corporate officers can be imputed to the corporation is the key unresolved issue. The officers guilty of misconduct were not Wedtech's sole shareholders, and of course, it is central to plaintiff's argument that these officers were not acting as agents of the corporation (see discussion *infra*). Therefore, we find that *Wagoner* is not controlling on the facts here, and we do not dismiss the action for lack of standing.

*Application of the Imputation Defense*

■ The issue of whether plaintiff is asserting creditors' claims is relevant not only to the standing issue, but to the question of whether the imputation defense is applicable here. Plaintiff argues for the first time in its reply papers to the motions for summary judgment that the issue of imputation and its "adverse interest" exception have no application to a bankrupt company: "[a] bankruptcy trustee, when representing the interests of innocent creditors, cannot be charged with the wrongdoing of corrupt former management." Plaintiff's Mem. at 57. Although plaintiff states that it is not prosecuting the claims of creditors, *see* Plaintiff's Mem. at 66 n. 21, it is clearly attempting to portray itself as the creditors' representative to protect itself from the imputation argument. *See* Plaintiff's Mem. at 60, 62, 63, 65–66. As a creditors' representative, plaintiff argues,

the trustee is working with a "clean slate," and should not suffer from the failings of the bankrupt company. *Id* at 62–63. Therefore, plaintiff argues, the trustee should not be subject to the same defenses, such as imputation, which could have been asserted against the bankrupt.

However, the caselaw on which plaintiff relies makes clear that the courts have found a trustee to be protected from these defenses only in a limited context, when exercising avoidance powers. For example, in *Wedtech Corp. v. Nofziger,* 88 B.R. 619 (Bankr.S.D.N.Y.1988), the court stated:

> In exercising avoidance powers under section 544(b), a trustee acts as a representative of the creditors of the estate. Hence, a trustee's ability to obtain a recovery for an estate and its blameless creditors may not be denied by the prepetition wrongful conduct of the debtor.

*Id.* at 622 (citations omitted); *see also In re Leasing Consultants, Inc.,* 592 F.2d 103, 110 (2d Cir.1979) ("[w]hen acting under this section [predecessor to § 544(b) ], a trustee is vested with the rights of creditors and is not limited to the rights of the bankrupt."). This expansion of rights under the avoidance power serves only as an exception to the general principle that "[t]he trustee succeeds only to such rights as the bankrupt possessed; and the trustee is subject to all claims and defenses which might have been asserted against the bankrupt but for the filing of the petition." *Bank of Marin v. England,* 385 U.S. 99, 101, 87 S.Ct. 274, 276, 17 L.Ed.2d 197 (1966); *see also* 11 U.S.C. § 541 (1988).

Where, as in the present case, a trustee is asserting claims that belonged to the bankrupt company before its petition, not to the creditors, this general rule applies. *See Miller v. New York Produce Exch.,* 550 F.2d 762, 767–68 (2d Cir.), *cert. denied,* 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977); *Eisenberg v. Feiner,* 100 B.R. 157, 173 (Bankr.S.D.N.Y.1989); *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1154–55 (3d Cir.1989). We find that plaintiff remains subject to

the imputation defense.[1] Therefore, the central issue in these motions for summary judgment, as it was in the motions to dismiss, is whether the "adverse interest" exception applies to the present case.

### The "Adverse Interest" Exception

■ It is a general principle of agency law that the acts and knowledge of an agent acting within the scope of his agency are imputed to the principal. *Center v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782, 784, 488 N.E.2d 828, 829, 497 N.Y.S.2d 898, 899 (1985). The "adverse interest" exception to this rule provides that "when an agent is engaged in a scheme to defraud a principal, either for his own benefit or that of a third person, the presumption that knowledge held by the agent was disclosed to the principal fails because he cannot be presumed to have disclosed that which would expose and defeat his fraudulent purpose." *Id.* at 784, 488 N.E.2d at 829, 497 N.Y.S.2d at 899–900.

The New York courts have found that "[t]o come within the exception, the agent must have totally abandoned his principal's interests and be acting entirely for his own or another's purposes. It cannot be invoked merely because he has a conflict of interest or because he is not acting primarily for his principal." *Id.* at 784–85, 488 N.E.2d at 830, 497 N.Y.S.2d at 900 (citations omitted); *Prudential–Bache Securities, Inc. v. Citibank*, 73 N.Y.2d 263, 276, 536 N.E.2d 1118, 1125, 539 N.Y.S.2d 699, 706 (1989). As we stated in our earlier opinion, "[t]he relevant issue is short term benefit or detriment to the corporation, not any detriment to the corporation resulting from the unmasking of the fraud." *In re Wedtech Corp.*, 81 B.R. 240, 242 (S.D.N.Y. 1987); *see also Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449, 456 (7th Cir.), cert. denied, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982).

Plaintiff argues that the test of "benefit" to the corporation is an objective one of whether "[the company's] value increased as a result of the fraud." Transcript of

Proceedings, December 11, 1991, at 23 (hereinafter "Tr."). Defendants contend that the relevant question is the motivation of the officers, although they also argue that the company did actually benefit for some period from the actions of these officers. We are not called upon at this procedural juncture to conclude whether the test for "benefit" is objective or subjective, because under either standard, material facts clearly remain in dispute.

Defendants principally rely upon deposition testimony of two Wedtech officers that company officers engaged in the misconduct at issue at least partly to benefit Wedtech. Main Hurdman's Memorandum of Law in Support of Defendants' Motion for Summary Judgment at 6–22, 26 (hereinafter "MH Mem."); Memorandum of Law in Support of Motion for Summary Judgment of Touche Ross & Co., at 8–16 (hereinafter "TR Mem."). They further argue that Wedtech did in fact receive short term benefit as a result of the public offering orchestrated by these officers. Plaintiff contests both the credibility of the officers' testimony, as well as the fact that the public offering was a "benefit" to Wedtech. We find that the complex factual background as well as the central credibility issues do not make this case capable of resolution on a summary judgment motion.

### Motion to Amend the Complaints

Rule 15(a) states that leave to amend a complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). This determination is within the discretion of the district court judge, and the judge should consider such factors as "undue delay, bad faith or dilatory motive on the part of the movant ... undue prejudice to the opposing party ... futility of amendment...." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

■ Defendants first argue that under *Wagoner*, the amendment would be futile because the trustee lacks standing for such additional claims as aiding and abetting

---

1. Plaintiff's existing complaint against Touche Ross includes a claim for fraudulent transfer. Because this falls within the avoidance powers, the imputation defense may not be applicable to this particular claim.

**10**

breach of fiduciary duty. MH Reply Mem. at 33; Touche Ross & Co.'s Reply Memorandum of Law in Further Support of its Motion for Summary Judgment and in Opposition to Wedtech's Cross-motion for Leave to Amend the Complaint, at 36–38. For the reasons discussed *supra*, we do not find that the trustee lacks standing to assert these claims, and so we do not conclude that the motion to amend should be denied on grounds of futility.

█ However, defendants also argue that the motion suffers from undue delay and would result in undue prejudice. MH Reply Mem. at 34–35; TR Reply Mem. at 33–35. Though this action was brought over four years ago, plaintiff did not make this motion until discovery had been completed and the defendants had filed motions for summary judgment. A motion to amend at this juncture is "particularly disfavored." *CL-Alexanders Laing & Cruickshank v. Goldfeld,* 739 F.Supp. 158, 167 (S.D.N.Y.1990); *see also Reisner v. General Motors Corp.,* 511 F.Supp. 1167, 1172 (S.D.N.Y.1981), *aff'd,* 671 F.2d 91 (2d Cir.), *cert. denied,* 459 U.S. 858, 103 S.Ct. 130, 74 L.Ed.2d 112 (1982). We therefore deny the motion for leave to amend on the grounds of undue delay and prejudice.

### CONCLUSION

For the reasons discussed above, defendants' motions for summary judgment are denied. Plaintiff's cross-motion for leave to file a second amended complaint is also denied.

SO ORDERED.