In re George A. NEGRO, Debtor.

Arnold L. BLASBALG, Trustee, Plaintiff,

v.

George A. NEGRO, Defendant.

Bankruptcy No. 93–10087.
Adv. No. 94–1052.

United States Bankruptcy Court,
D. Rhode Island.

Jan. 17, 1995.

As Corrected Feb. 17, 1995.

Jason D. Monzack, Kirshenbaum & Kirshenbaum, Cranston, RI, for debtor/defendant.

Office of the U.S. Trustee, Sheryl Serreze, Providence, RI.

Peter J. Furness, Peabody & Brown, Providence, RI, for plaintiff.

Arnold L. Blasbalg, Chapter 7 Trustee, Providence, RI.

### ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on September 28, 29, and October 4, 1994, on: (1) the Trustee's Motion to adjudge the Debtor in Contempt, and for the Imposition of Sanctions Against the Debtor; (2) the Trustee's Motion for Judgment on the Pleadings; and (3) the Debtor's Motion for Leave to File an Amended Answer to the Amended Complaint. We will address the pleadings in the order in which they appear above.

*Motion to Adjudge in Contempt*

One of the assets of the Chapter 7 estate is a farm on Collins Road in Westerly, Rhode Island. During the time relevant to this proceeding, the farm business was being operated by Kathleen Moriarty, the principal of Hopkinton Riding Stables, Inc. (Hopkinton), and a friend of Mr. Negro. The Trustee commenced two adversary proceedings against both Hopkinton and Moriarty; one

alleging various fraudulent transfers, and the other seeking a permanent injunction against the sale or transfer of estate assets by Hopkinton and/or Moriarty, without prior Court approval.

On July 8, 1994, the Trustee entered into an agreement with Moriarty and Hopkinton, settling both adversary proceedings. As part of the compromise, Moriarty would keep four horses, a dog, the money in her personal bank account, two saddles, a bridle, and certain other personal possessions. It was agreed that the remainder of the disputed assets were the property of the estate. Moriarty also consented to the entry of a permanent injunction against the transfer of any property without Court approval. Shortly after the settlement Moriarty vacated the premises, and Mr. Negro took over the operation of the farm.

On July 26, 1994, the Trustee went to the farm to show some of the livestock to a prospective purchaser, and discovered that approximately seven horses, a horse trailer, six cows, and a dump truck were missing, or at least were not where they were supposed to be. The Debtor told the Trustee that "the animals must be in the rear portion of the farm," and were just not visible from where they stood. The horses were not there, nor were they anywhere else on the farm. After further investigation, and being satisfied that Mr. Negro was not being candid, the Trustee filed the instant Motion for contempt and for the imposition of sanctions, alleging that the Debtor had violated the permanent injunction against transferring estate assets.[1]

At the hearing, the Debtor admitted that he did remove three horses and put them on a neighboring farm, "because they were like his children," and he "was afraid they would be taken from him." He also testified that in order to pay for farm operations after Moriarty left, he sold various animals for a total of $1,250, and also expended $4,000 of "his own money" to cover farm expenses between February and August 1994. The Debtor also

testified that he had moved the dump truck to his garage in Groton, Connecticut, for transmission repairs. In none of his explanations has Mr. Negro given any acceptable reason why he moved estate property without requesting or receiving authority to do so.

The major items not accounted for in the Moriarty inventory were four quarter horses, over which there was much confusion regarding identity, because the Debtor refers to them by names different than those listed in the inventory. Although Mr. Negro also claims, disingenuously, we think, that he did not remember seeing any quarter horses on the farm when Moriarty departed, the burden on this issue is with the Trustee, and he comes up short, evidence-wise.

While we continue to have problems with the Debtor's credibility in this case, together with his repeated attempts to appear unsophisticated and therefore not accountable for his ongoing misbehavior (a contention that is flatly rejected), we conclude, based on the record herein, that the Debtor's actions, although far from acceptable, are not clearly sanctionable. The Debtor sold livestock which otherwise would have required a significant amount of attention and expense,[2] and as for the remaining livestock, he was faced with the task of providing care without running water or electricity. In the circumstances, giving him the benefit of quite a few doubts, and notwithstanding the fact that Mr. Negro is by far his own worst enemy when it comes to creating the appearance of impropriety, the Trustee has not shown that he is in willful contempt, *in this instance*. Therefore, with the element of willfulness not established, we find that the Debtor was in technical contempt only, and deny the request for sanctions.

*Motion for Judgment on the Pleadings, & Motion for Leave to Amend Answer*

■ We treat these Motions together, because the Debtor filed his Motion for Leave

---

1. While the injunction ran against Moriarty and Hopkinton, and not Mr. Negro personally, we are satisfied that he was also subject to the terms of the injunction when he began to operate the farm, after Moriarty's departure.

2. Among the animals sold were four yearling steers that required special feed, and a horse with an injured foot that required veterinary attention.

to Amend Answer *only* in response to the Trustee's Motion for Judgment on the Pleadings. The instant adversary proceeding was filed by the Trustee on February 9, 1994, on the following day, February 10, 1994, the Trustee filed an amended complaint objecting to the Debtor's Discharge under 11 U.S.C. § 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), (a)(4)(C), (a)(4)(D), and (a)(7). On March 24, 1994, the Debtor filed his Answer to the Complaint through his then attorney of record, Richard Panciera, Esq. Although Geoffrey Regan, Esq., had previously been providing advice to Mr. Negro, he officially entered his appearance on behalf of the Debtor on April 18, 1994. On April 25, 1994, the Trustee filed his Motion for Judgment on the Pleadings. More than three months later, on August 10, 1994, Mr. Regan filed a *Motion for Leave to file an Amended Answer* to the Complaint, as well as an Objection to the Trustee's Motion for Judgment on the Pleadings. The Objection restated the Debtor's position that he would be seeking to amend his answer to the Complaint.

In reviewing the Motion to Amend, the Court recognizes that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15.[3] However, a litigant's ability to amend is not automatic or without limit. *See Deasy v. Hill,* 833 F.2d 38, 40 (4th Cir.1987), *cert. denied,* 485 U.S. 977, 108 S.Ct. 1271, 99 L.Ed.2d 483 (1988); *In re Suburban Motor Freight, Inc.,* 114 B.R. 943, 950 (Bankr.S.D.Ohio 1990). The Supreme Court has stated that

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

As grounds for his Motion to Amend, the Debtor states that:

2. On or about March 18, 1994 the Debtor was summoned to the offices of Richard Panciera, Esquire and directed to sign a document entitled "Debtor's Answer to the Trustee's Complaint Objecting to the Discharge of Debtor";

3. The Debtor was not consulted with respect to the content of that answer nor was the Debtor given an opportunity to review the Complaint filed in this proceeding and to respond to the allegations contained therein.

(Debtor's Motion for Leave to File an Amended Answer to the Amended Complaint Objecting to the Discharge of the Debtor Pursuant to 11 U.S.C. § 727 of the Bankruptcy Code, August 9, 1994, at 1–2). In further support of his motion, the Debtor states in his Objection to the Trustee's Motion for Judgment on the Pleadings that:

> Debtor was never consulted during the preparation of the original answer to the Trustee's Amended Complaint in this proceeding. Attorney Panciera, who prepared the answer, relied heavily on representations made to him by Attorney Comolli in the preparation of the answer which was filed. The Debtor did not see the answer which was filed on his behalf until he was contacted by Attorney Panciera to appear at Attorney Panciera's office to sign the answer. The Debtor was not instructed to review the contents of the Complaint nor the contents of the Answer and the actual meeting between Debtor and his counsel took less time than would be required to simply read the Complaint itself, let alone discuss its merits.

(Debtor's Objection to Trustee's Motion Pursuant to Bankruptcy Rule 7012(c) for Judgment on the Pleadings, August 9, 1994, at 5).

The record fails to support these allegations. Attorney Panciera testified that between March 10, 1994 and March 18, 1994, he spent approximately 12 hours with the Debtor preparing the answer to the complaint. Panciera further testified: that the answers were based on information obtained from the Debtor, and not on information provided by the Debtor's former attorney, George Comolli, Esq.; that on March 18, 1994, the day the

3. This rule is made applicable in adversary proceedings by Fed.R.Bankr.P. 7015.

answer was signed, the Debtor met with him for 1.5 hours and had ample opportunity to review the answer and to make changes; that he signed the answer on March 18, and believes it is accurate and contains no misrepresentations. The Debtor testified, in contradiction of his own written allegations, that he did help Panciera to prepare the answer, and that they did meet on at least five occasions. Mr. Negro complains, however, that the meetings lasted only 15 to 20 minutes ("a half hour at most"), and that other things were discussed, in addition to the answer to the Complaint. Mr. Negro also conceded that Panciera provided the typed answers for him to review before signing the pleading, but that he chose not to read the answers "because he would not understand them, and that he relied on and trusted his attorney to provide proper responses."

We accept Mr. Panciera's version that he met with the Debtor on several occasions and that it was the Debtor who provided the answers to the complaint. When it comes to disputed issues of fact, as usual we find the Debtor not to be a credible witness,[4] and that while he would like this Court to believe that he functions, intellectually, at about a sixth grade level, Mr. Negro is in fact fully knowledgeable about his business and financial dealings, and the consequences thereof. He misjudges, however, the ethical and legal boundaries of his authority as a debtor, and totally overestimates his ability to sell incredible stories to the Court, the Trustee, and his creditors.

By filing a motion to amend at this stage of the proceeding, and then only in reaction to the filing of a dispositive motion, and by giving testimony that directly contradicts the allegations in his own motion, Mr. Negro continues his familiar pattern of questionable behavior. Based upon all of the foregoing, we find and conclude that the Motion to Amend was not filed in good faith, and that, if granted, would cause undue delay and prejudice to the Trustee. *See CEPA Consulting Ltd. v. King Main Hurdman (In re Wedtech Sec. Litigation)*, 138 B.R. 5 (S.D.N.Y.1992) (a motion to amend an an-

swer filed in response to summary judgment motion was "particularly disfavored," and the motion to amend was denied because it would cause undue delay and prejudice); *Resolution Trust Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir.1994) (a motion to amend filed after a motion for summary judgment requires a showing that the "proposed amendments … [are] supported by 'substantial and convincing evidence.'") The Trustee in this case filed an extensive motion based on the original answer, as well as the responses given in discovery in other pending adversary proceedings. This Court is convinced that the Debtor is not seeking to amend his answer because of newly discovered evidence, nor for any other legitimate purpose. He is merely attempting, belatedly, to retract material which, in hindsight, he now views as harmful to his defense.

■ Additionally, to approximately 60 of the 200, plus, allegations in the complaint, the Debtor has responded by saying:

> Debtor denies that any response is required to the allegations contained … as the document(s) and/or (deposition) testimony referred to therein speak for itself, but to the extent that any answer is required, the debtor denies that he acted in any way contrary to the law.

(See Debtor's Amended Answer attached to Debtor's Motion for Leave to File an Amended Answer.) Under Fed.R.Bankr.P. 7008, which makes Fed.R.Civ.P. 8 applicable in bankruptcy, such a response is not a specific denial, and may constitute an admission of the allegation. *See Mahanor v. United States*, 192 F.2d 873, 876 (1st Cir.1951). This type of gamesmanship is just more evidence of the Debtor's willingness to engage in bad faith and his unfair use of the pleading process.

Accordingly, for all of the foregoing reasons, the Debtor's Motion to Amend his Answer is DENIED.

Upon review of the Trustee's Motion for Judgment on the Pleadings, we have taken into consideration the Complaint and the attached exhibits, the Answer as filed, the sworn testimony, and the Trustee's Motion

---

4. All disputed issues of credibility herein are resolved against the Debtor.

and Memorandum. For the reasons stated by the Trustee in his Motion for Judgment on the Pleadings, and in his memorandum in support thereof, which we adopt and incorporate herein by reference, the Trustee's Motion for Judgment on the Pleadings is GRANTED.

Enter Judgment consistent with this opinion.