09-2020-cv (L)
Kirschner v. KPMG LLP

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2009

Heard: September 18, 2009       Certified to New York Court of Appeals: December 28, 2009

Decided: November 18, 2010

Docket Nos. 09-2020-cv (L), -2027-cv (CON)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARC S. KIRSCHNER, as Trustee of the Refco
Litigation Trust,
          Plaintiff-Appellant,

v.

KPMG LLP, GRANT THORNTON LLP, MAYER BROWN LLP,
INGRAM MICRO, INC., CIM VENTURES, INC., WILLIAM
T. PIGOTT, MAYER BROWN INTERNATIONAL LLP,
PRICEWATERHOUSECOOPERS LLP, LIBERTY CORNER
CAPITAL STRATEGIES, LLC, BANC OF AMERICA
SECURITIES, LLC, CREDIT SUISSE SECURITIES (USA)
LLC, and DEUTSCHE BANK SECURITIES, INC.,
          Defendants-Appellees.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Before: NEWMAN, PARKER, and LIVINGSTON, <u>Circuit Judges</u>.

Appeal from the May 8, 2009, judgment of the United States District Court for the Southern District of New York (Gerard E. Lynch, then District Judge), dismissing a suit brought by the trustee of a litigation trust, resulting from a bankruptcy proceeding, in which the trustee alleged misconduct by corporate insiders and advisers. The District Court ruled that the trustee lacked standing because the

insiders' misconduct was imputed to the corporation. On appeal, the trustee contends that the "adverse interest" exception precludes imputation.

After receipt of an opinion from the New York Court of Appeals answering certified questions, the judgment of the District Court is affirmed.

Kathleen M. Sullivan, Quinn Emanuel Urquhart Oliver & Hedges, LLP, New York, N.Y. (Richard I. Werder, Jr., Sascha N. Rand, Sanford I. Weisburst, K. McKenzie Anderson, Quinn Emanuel Urquhart Oliver & Hedges, LLP, New York, N.Y., on the brief), for Plaintiff-Appellant.

Linda T. Coberly, Winston & Strawn LLP, Chicago, Ill., for Defendant-Appellee Grant Thornton LLP.

Kevin A. Burke, Howrey, LLP, New York, N.Y. (Gary F. Bendinger, Sarah D. Abeles, Howrey LLP, New York, N.Y., on the brief), for Defendant-Appellee KPMG LLP.

Philip D. Anker, Lori A. Martin, John V.H. Pierce, Anne K. Small, Jeremy S. Winer, Wilmer Cutler Pickering Hale and Dorr LLP, New York, N.Y., on the brief, for Defendants-Appellees Banc of America Securities, Credit Suisse Securities and Deutsche Bank Securities.

Anthony Candido, Clifford Chance LLP, New York, N.Y., on the brief, for Defendant-Appellee Mayer Brown International.

James J. Capra, Jr., Orrick, Herrington & Sutcliffe LLP, New York, N.Y., Kenneth Y. Turnbull, Orrick, Herrington & Sutcliffe LLP, Washington, D.C., on the brief, for Defendant-Appellee PricewaterhouseCoopers.

Robert F. Wise, Jr., Paul Spagnoletti, Davis
Polk & Wardell LLP, New York, N.Y., on the
brief, for Defendants-Appellees Ingram
Micro, Inc. and CIM Ventures, Inc.

Kevin H. Marino, John D. Tortorella, Marino,
Tortorella & Boyle, P.C., Chatham, N.J., on
the brief, for Defendants-Appellees William
Pigott and Liberty Corner Capital
Strategies.

John K. Villa, George A. Borden, Craig D.
Singer, Williams & Connolly LLP,
Washington, D.C., on the brief, for
Defendant-Appellee Mayer Brown LLP.

JON O. NEWMAN, Circuit Judge.

This appeal concerns the standing of the trustee of a bankrupt corporation's litigation trust to sue third parties who allegedly assisted corporate insiders in defrauding the corporation's creditors. The appeal primarily raises the issue of whether, under New York law, the acts of the corporate insiders can be imputed to the corporation, in which event, pursuant to the so-called Wagoner rule, the trustee for a debtor corporation lacks standing to recover against third parties for damage to the creditors, see Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 118 (2d Cir. 1991), or whether the "adverse interest" exception precludes imputation. Plaintiff-Appellant Marc Kirschner ("the Trustee"), in his capacity as the Trustee of the Refco Litigation Trust, appeals from the May 8, 2009, judgment of the District Court for the Southern District of New York (Gerard E. Lynch, then District Judge), dismissing the Trustee's suit for lack of

-3-

standing under the Wagoner rule. See Kirschner v. Grant Thornton LLP, No. 07 Civ. 11604, 2009 WL 1286326 (S.D.N.Y. Apr. 14, 2009) ("Kirschner I"). The Trustee brought the suit on behalf of Refco Group Ltd., LLC ("RGL"), its indirect subsidiary, Refco Capital Markets, Ltd. ("RCM"), and Refco Inc., the entity created by Refco's initial public offering (collectively "Refco"), against senior management of Refco, law firms, and accounting firms that allegedly participated in defrauding Refco's creditors.

The Trustee principally argues that the District Court erred in imputing the insiders' wrongdoing to Refco because, the Trustee contends, the Refco insiders, in perpetrating the fraud, totally abandoned Refco's interests, and therefore the adverse interest exception to imputation applies. Because of our uncertainty about aspects of New York law concerning the adverse interest exception, we certified questions to the New York Court of Appeals. Having received that Court's opinion helpfully answering our questions, see Kirschner v. KPMG LLP, Nos. 151, 152, 2010 WL 4116609 (N.Y. Ct. App. Oct. 21, 2010) ("Kirschner III"), we now affirm, adopting the opinion of the District Court.

The facts are summarized in our prior opinion, see Kirschner v. KPMG LLP, 590 F.3d 186, 188-90 (2d Cir. 2009) ("Kirschner II"), and elaborated in the District Court's opinion, see Kirschner I, 2009 WL 1286326, at *1-*4, familiarity with both of which is assumed. In

-4-

dismissing the Trustee's suit, Judge Lynch stated several propositions for determining whether the "adverse-interest" exception to the Wagoner rule applied. First, he explained, the corporate officer must have "totally abandoned" the corporation's interests and "be acting entirely for his own or another's purposes." Id. at *5 (internal quotation marks omitted); see Mediators, Inc. v. Manney (In re Mediators, Inc.) 105 F.3d 827 (2d Cir. 1997). He quoted from our recent decision in In re CBI Holding Co. v. Ernst & Young, 529 F.3d 432, 448 (2d Cir. 2008), which explained that "when an agent is engaged in a scheme to defraud his principal, either for his own benefit or that of a third person, . . . he cannot be presumed to have disclosed that which would expose and defeat his fraudulent purpose." Kirschner I, 2009 WL 1286326, at *6 (internal quotation omitted); see People v. Kirkup, 4 N.Y.2d 209, 213-14, 173 N.Y.S.2d 574 (1958); Benedict v. Arnoux, 154 N.Y. 715, 729 (1898).

Judge Lynch also recognized, as we said in CBI, that "New York courts have cautioned that [the adverse interest] exception is a narrow one and that the guilty manager 'must have totally abandoned' his corporation's interests for [the exception] to apply." Kirschner I, 2009 WL 1286326, at *6 (quoting CBI, 529 F.3d at 448); see Center v. Hampton Affiliates, Inc., 66 N.Y.2d 782, 784-85, 497 N.Y.S.2d 898 (1985). Next Judge Lynch noted that whether the agent's actions were adverse to the corporation turns on the "'short term benefit or

-5-

detriment to the corporation, not any detriment to the corporation resulting from the unmasking of the fraud.'" Kirschner I, 2009 WL 1286326, at *6 (quoting In re Wedtech Corp., 81 B.R. 240, 242 (S.D.N.Y. 1987)).

In our prior opinion, we noted that all of these propositions appeared to correctly reflect New York law concerning the adverse interest exception, and we did not understand the parties to dispute them. See Kirschner II, 590 F.3d at 191. As Judge Lynch applied these propositions to the Trustee's allegations, however, he interpreted New York law in ways that brought the parties into sharp dispute on appeal concerning certain aspects of the adverse interest exception. The dispute principally concerned both the state of mind of the insiders and the harm to their corporation.

State of mind. Judge Lynch noted the Trustee's argument "that the adverse-interest exception . . . applies because the insiders intended to benefit only themselves." Kirschner I, 2009 WL 1286326, at *7. In CBI we had said "that the 'total abandonment' standard," which must be met for the adverse interest exception to apply, "looks principally to the intent of the managers engaged in misconduct." CBI, 529 F.3d at 451. Judge Lynch acknowledged this statement from CBI, see Kirschner I, 2009 WL 1286326, at *7, but discounted its significance by noting that CBI was concerned with the district court's rejection of the bankruptcy court's finding that the real

-6-

reason for the insider's fraud in CBI was to maximize his bonus. See id. CBI ruled that the bankruptcy court's finding as to the insider's intent was not clearly erroneous. See CBI, 529 F.3d at 449. Judge Lynch further stated that "the participants' intent" is not the "'touchstone'" of the analysis, Kirschner I, 2009 WL 1286326, at *7, and that CBI does not "hold that the mere allegations of an insider's intent to personally profit is sufficient to defeat application of the Wagoner rule at the pleading stage." Id. As he explained, "[The Wagoner rule] addresses the question of who has a claim for relief, which, in the context of fraud, means who has been harmed and who has benefitted by the fraudulent conduct alleged. This question concerns the nature and consequences of the alleged fraud, not the extent to which the perpetrators acted from self-interested motives." Id. (footnote omitted).

Because the Trustee had argued on appeal to this Court that the insiders' intent to benefit themselves sufficed to render the adverse interest exception applicable and because we considered New York law and our own language in CBI to create some uncertainty as to the significance of the insiders' intent, one question that we certified to the New York Court of Appeals asked, "[W]hether the adverse interest exception is satisfied by showing that the insiders intended to benefit themselves by their misconduct[?]" Kirschner II, 590 F.3d at 194-95. The Court of Appeals answered, "No." Kirschner III, 2010

-7-

WL 4116609, at *__.

Harm. Judge Lynch further stated that "the Trustee must allege, not that the insiders intended to, or to some extent did, benefit from their scheme, but that the corporation was <u>harmed</u> by the scheme, rather than being one of its beneficiaries." <u>Kirschner I</u>, 2009 WL 1286326, at *7 (emphasis in original). On the other hand, <u>CBI</u> had stated that "[e]vidence that CBI <u>actually benefitted</u> from CBI's management's fraud does not make the bankruptcy court's finding that CBI's management did not <u>intend to benefit</u> the company clearly erroneous." <u>CBI</u>, 529 F.3d at 451 (emphasis in original). <u>CBI</u> placed some reliance on <u>Capital Wireless Corp. v. DeLoitte & Touche</u>, 216 A.D. 2d 663, 627 N.Y.S.2d 794 (N.Y. App. Div. 1995), which had ruled that a triable issue existed because although the "fraud generated much needed financing for plaintiff and forestalled its bankruptcy," the wrongdoer might still have totally abandoned the company's interest. <u>See</u> <u>CBI</u> 529 F.3d at 451 (citing <u>Capital Wireless</u>, 216 A.D.2d at 666, 627 N.Y.S.2d at 797).

In the pending case, Judge Lynch ruled that "[t]he complaint is saturated by allegations that Refco received substantial benefits from the insiders' alleged wrongdoing." <u>Kirschner I</u>, 2009 WL 1286326, at *6. He recounted the following:

> The Trustee alleges both that had Refco's trading losses been disclosed, it would have "severely damaged Refco's business" and that the improper round-trip loans and misappropriation of customer assets at RCM were designed to,

-8-

and did, in fact, buttress Refco's organization. (Compl. ¶¶ 32, 64, 492) The illicit cash flow from RCM, in particular, was used for a "wide variety of general and specific funding purposes by various Refco affiliates who would not have been able to sustain their reported financial health and operations without using funds stolen from RCM." (Compl. ¶ 98) These benefits are plainly evident in the Trustee's allegations that the insider's conduct enabled the false reporting of the company's steady growth, which in turn, attracted and retained capital from investors in the LBO and the IPO. (Compl. ¶¶ 94-105) Indeed the gravamen of the Trustee's allegations is not that the insiders stole assets <u>from</u> Refco, but rather that the insiders' fraudulent scheme was to steal <u>for</u> Refco--to inflate the value of Refco's interests on behalf of Refco itself by maintaining the illusion that Refco was "fast-growing, highly profitable, and able to satisfy its substantial working capital needs without having to borrow money." (Compl. ¶ 94)

<u>Id.</u> (emphasis in original) (punctuation slightly altered).

Judge Lynch also reckoned with the Trustee's arguments that the insiders' misconduct in fact harmed Refco. First, he considered the argument

that RCM, RGL, and Refco Inc. were injured by an "imprudent" LBO and IPO (Compl. ¶¶ 352, 463), in that RCM was injured when the receivables owed to it by other Refco entities were subordinated by the receivables owed to the Investment Bank Defendants following the LBO (Compl. ¶ 336), RGL was damaged when it incurred $1.4 billion in new LBO debt and was no longer able to repay the funds diverted from RCM to RGL and its affiliates (Compl. ¶¶ 452, 460, 476), and Refco, Inc. was injured when it was "saddled with hundreds of millions of dollars in liability to the purchasers of Refco stock," and used $231 million in proceeds from the IPO to retire part of RGL's LBO debt (Compl. ¶¶ 136-37).

<u>Id.</u> at *8. He rejected these allegations of "harm," pointing out that "[i]t is a basic principle of corporate finance that extending credit to a distressed entity in itself does the entity no harm." <u>Id.</u>

-9-

Second, he reckoned with "[t]he Trustee's attempt to parse the Refco fraud in pursuit of establishing a corporate injury to some particular corporate unit within Refco." Id. at *9. He rejected this argument essentially because any harm to a Refco entity benefitted the entire Refco fraud:

> Both Refco's round-robin fraud and its distribution of LBO and IPO debt were dedicated to "maintain[ing] the illusion of [the] financial and operational strength and stability" of Refco. (Compl. ¶ 4) Both RCM and RGL participated--for good and for ill--in the Refco fraud. Although the assets at RCM were siphoned to other Refco entities, the Trustee acknowledges that absent Refco's--and preeminently RGL's-- artificially-induced solvency, customers would not have "continued [to make] deposits of cash and securities . . . needed to facilitate and fund" the corporation. (Compl. ¶¶ 60, 63)  In turn, the fact that RGL was "finance[d]" and "prop[ped] up" by assets misappropriated from RCM (Compl. ¶¶ 7, 448), benefitted RGL.  The concealment of Refco's losses "maintained the illusion that Refco was a highly successful, financially secure broker-dealer." (Compl. ¶ 2)  The fact that RGL could not repay its "loans" to RCM upon incurring $1.4 billion in new LBO debt (Compl. ¶¶ 452, 460, 476), . . . is a harm not to RGL, but to RGL's creditors, to whom the assets were owed.

Id. (punctuation slightly altered).

Because the Trustee had argued on appeal to this Court that the adverse interest exception does not require an allegation of harm to the corporation, Brief for Appellant at 40-42, and because we considered New York law and our own language in CBI to create some uncertainty as to whether the adverse interest exception required harm to the corporation, another question that we certified to the Court of Appeals asked, "[W]hether the exception is available only where the

-10-

insiders' misconduct has harmed the corporation[?]" <u>Kirschner II</u>, 590 F.3d at 194-95. The Court of Appeals answered, "Yes." <u>Kirschner III</u>, 2010 WL 4116609, at *___.

The responses from the Court of Appeals have authoritatively announced New York law on the issues on which we were in doubt. Moreover, these answers demonstrate that Judge Lynch correctly understood New York law in reaching his decision to dismiss the Trustee's suit. With respect to all of the Trustee's contentions challenging other aspects of Judge Lynch's decision, we conclude that he correctly rejected the Trustee's arguments, and we adopt his opinion as the resolution of this appeal. To whatever extent language in <u>CBI</u> might be thought to misstate New York law concerning the adverse interest exception, such language must henceforth be understood in light of the authoritative views expressed by the Court of Appeals.

## Conclusion

The judgment of the District Court is affirmed.