In the Matter of The MEDIATORS, INC., Debtor.

The MEDIATORS, INC., Plaintiff,

v.

Richard MANNEY, Gloria Manney, Patricia Manney, Citibank, N.A., Morris J. Cohen & Co., P.C., Astor, Weiss, Kaplan & Rosenblum (f/k/a Astor, Weiss & Newman), Arthur R. Kaplan, John and/or Jane Doe # 1 to # 10, Doe Corporation # 2 to # 10, Doe Partnership # 1 to # 10, and Doe Foundation # 1 to # 10, the names of the foregoing thirty-nine defendants being unknown, it being intended to designate parties who have received transfers, directly or indirectly, from plaintiff or Richard or Gloria Manney or who were directors of plaintiff, Defendants.

No. 91 B 12980 (PBA).
Adv. No. 93 Civ. 2304 (CSH).

United States District Court,
S.D. New York.

Dec. 4, 1995.

Patterson, Belknap, Webb & Tyler, New York City (David W. Dykouse, Stephen P. Younger, Eric Wertheim, Christopher J. McDonald, of counsel), for plaintiffs.

McDermott, Will & Emery, New York City (Lawrence I. Fox, of counsel), for Gloria and Patricia Manney.

Schwarzfeld, Ganfer & Shore, New York City (Steven J. Shore, of counsel), Salomon Green & Ostrow, P.C., New York City (David Green, of counsel), for Richard Manney.

Skadden, Arps, Slate, Meagher & Flom, New York City (George A. Zimmerman, Mark Gross, of counsel), for Citibank.

Wilson, Elser, Moskowitz, Edelman & Dicker, New York City (Steven Verveniotis, of counsel), for Astor Weiss, Kaplan & Rosenblum and Arthur Kaplan.

D'Amato & Lynch, New York City (Wendella D. Downer, of counsel), for Morris J. Cohen & Co. P.C.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge:

A committee of unsecured creditors (hereinafter "plaintiff") has brought the present action on behalf of the now-bankrupt Mediators, Inc. (the "Mediators" or the "debtor") to recover monies alleged to have been diverted fraudulently from the corporation. Plaintiff has asserted numerous federal and state causes of action, each of which implicates one or more of the named defendants in the alleged wrongdoing.

Presently before the Court are four separate motions to dismiss the complaint for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6).[1] Of these four motions, the three brought by Citibank, N.A. ("Citibank"), the accounting firm of Morris J. Cohen & Co. ("Cohen"), and the Philadelphia law firm of Astor, Weiss, Kaplan & Rosenblum and Arthur R. Kaplan jointly (the

---

1. The Astor defendants have also moved to dismiss for lack of personal jurisdiction under Fed. R.Civ.P. 12(b)(2) and on the ground of forum non conveniens.

"Astor defendants") are interrelated. Citibank, has, in its own capacity, challenged plaintiff's standing to bring one of the claims against it. This challenge applies with equal force to certain other claims asserted against Citibank, as well as each of the claims asserted against Cohen and the Astor defendants. Therefore, I consider these motions to dismiss together. An opinion resolving Richard, Gloria and Patricia Manney's joint motion to dismiss will be filed separately.

## I.

On a motion to dismiss under Rule 12(b)(6), the trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980); *see Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 124 (2d Cir.1991). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The district court should grant a Rule 12(b)(6) motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (*citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

Except in certain circumstances, consideration of a motion to dismiss the complaint must focus on the allegations contained on the face of the complaint. *See Cortec Industries, Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir.1991). On a motion to dismiss, a district court must accept plaintiff's well-pleaded factual allegations as true, *Papasan v. Allain*, 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986), and the allegations must be "construed favorably to the plaintiff." *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991). "[A] Rule 12(b)(6) motion to dismiss need not be granted nor denied in toto but may be granted as to part of a complaint and denied as to the remainder." *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir.1982).

## II.

The complaint at bar, which has once been amended, contains a wide array of factual allegations, many of which have no bearing on the present motions. What follows is a summary of the relevant facts, gleaned from the complaint and construed in the light most favorable to the plaintiff.

The Mediators, a privately held New York corporation, is a media-buying and barter company engaged primarily in acquiring radio and television advertising time for its clients in return for their goods and services. Clients of the Mediators tender merchandise or services and receive "media credits" in return. The Mediators then sells the merchandise or services, and uses part of the proceeds to purchase advertising time. The clients can exchange their media credits for time slots of equivalent value. This method of doing business creates a situation in which the corporation's primary asset is cash proceeds, and its primary liability is an outstanding bulk of media credits.

Richard Manney ("Manney"), the Mediators' sole shareholder, chief executive officer and chairman, has at all relevant times controlled the corporation's operations. His wife, Gloria Manney, treasurer, secretary and a director of the corporation, has provided limited assistance in this regard. Patricia Manney, their daughter, was a salaried employee of the Mediators between 1986 and 1988, but had at most a negligible role in its operations during that time frame.

The Manneys are avid art collectors, and have, over a number of years, involved the Mediators in their passion. At the behest of Manney, the debtor began purchasing works of art in the late 1970's and continued to do so as the company prospered in the 80's. At times, however, the corporation's cash reserves were not sufficiently large to finance these purchases, and Manney was forced to borrow millions of dollars on behalf of the corporation. As the art collection grew, so

did the Mediators' indebtedness. Although the corporate entity bore the financial brunt of these purchases, the Manneys, as individuals, were the primary beneficiaries. The artwork collection, which consisted of expensive paintings, antique furniture, fine jewelry, and rare collectibles, was used to furnish their home and outfit the Manneys for special occasions.

In 1987, the Mediators encountered severe economic adversity. Two years before, the Mediators had negotiated a barter transaction with Wang Laboratories, Inc. ("Wang"), in which the Mediators would purchase Wang products in exchange for cash and media credits. The Mediators' corporate counsel—the law firm of Astor, Weiss, Kaplan & Rosenblum, and Arthur Kaplan specifically—represented it in these negotiations, and drafted the barter agreement. Soon after this agreement was consummated, a dispute arose between Wang and the Mediators about the proper method for calculating cash payments due to Wang under the contract. Wang ultimately sued the Mediators for, *inter alia*, breach of contract, and the jury returned a $17 million jury verdict in Wang's favor.

The Wang verdict placed a severe financial strain on the Mediators, forcing Manney to contemplate filing a Chapter 11 petition. Realizing that any such reorganization would jeopardize the artwork collection, Manney employed the Astor defendants and the Mediators' accountants, the Cohen firm, to formulate a plan for placing the corporate artwork beyond the grasp of creditors. The recommendation they proffered was simple and straightforward: Manney would buy the artwork back from the corporation at a discount price, thereby converting it into a personal asset shielded from creditors by the corporate veil.

On June 29, 1988, formal ownership of the artwork changed hands in a three-way transaction involving Manney, the Mediators and Citibank. Citibank loaned $12,000,000 to Manney, which he then used to purchase the artwork for a purported price of $12,646,690. Although this was the original cost of the artwork to the Mediators, the collection had since appreciated in value, and by the time of the transaction, was worth well in excess of the sale price. The loan extended by Citibank was guaranteed by the Mediators in the amount of $12,125,000. In addition, the Mediators tendered a one-year time deposit of $4,125,000, the principal and proceeds of which secured a portion of the loan. The loan was also secured by the artwork itself. After the transaction was complete, the Astor defendants rendered an opinion letter which stated that the documents executed in connection with the transfer were "legal, valid and binding" upon the Mediators and Richard Manney.

Plaintiff describes these transactions as "nothing more than a shameful case of musical chairs." Not only was the Mediators paid too low a price for the artwork, but it also remained liable for the sale price. Manney, on the other hand, accomplished what he set out to do—insulate his treasured art collection from an approaching onslaught of unsecured creditors. Meanwhile, Manney's accessories—Citibank, the Astor defendants, and Cohen—received significant fees for helping to orchestrate the transaction. Although the complaint does not state that the Astor defendants or Cohen knew of the inadequate sale price, plaintiff does allege that they recommended this transaction as a way of stripping the corporation of its most valuable assets, and understood that the Mediators received no real value in exchange for the artwork. As for Citibank, it is charged with actual or constructive knowledge of both the low price and the fraudulent nature of the conveyance.

On July 2, 1991, approximately three years after the artwork transfer was consummated, Manney's fears concerning the fate of the Mediators came to pass. An involuntary liquidation petition under Chapter 7 of the Bankruptcy Code was filed against the Mediators by American Broadcasting Companies, Inc., ABC Radio Network Inc., and ESPN, Inc. On September 13, 1991, upon motion of the debtor, the United States Bankruptcy Court for the Southern District of New York entered an order converting the case to Chapter 11. To this date, the debtor remains in possession of its property.

On October 16, 1991, an unsecured creditors' committee was appointed pursuant to section 1102 of the Bankruptcy Code by Harold Jones, United States Bankruptcy Trustee. Finding that the Mediators "unjustifiably failed to bring suit on colorable causes of action," the Bankruptcy Court authorized the Committee to prosecute this suit by order dated April 9, 1992. The original complaint, dated April 22, 1992, alleged that the Manneys had enriched themselves at the corporation's expense by appropriating corporate assets for little or no consideration. Included among these claims were allegations pertaining to the artwork transaction. However, the complaint only named the Manneys as defendants; plaintiff had not yet uncovered facts implicating Citibank, the Astor defendants, or Cohen in the Manneys' fraudulent scheme.

Manney moved to dismiss these claims on the ground that the Bankruptcy Court lacked subject matter jurisdiction. In order to avoid delay, the parties agreed to proceed in District Court, and moved jointly for an order withdrawing the reference from the Bankruptcy tribunal. The District Court (Cedarbaum, J.) granted this motion on October 19, 1992, and the case was assigned to this Court on April 22, 1993.

Against this background, plaintiff has filed an amended complaint against the three members of the Manney family, the Astor defendants, Cohen, Citibank, and "John Doe" defendants, unidentified transferees of some of the debtor's assets. The amended complaint pleads 17 claims. Some of them are against one or more of the Manneys only. One claim is against John Doe defendants only. The remaining claims are asserted against one or more of these various defendants, and one or more of the defendants whose motions to dismiss are considered in this opinion. I will summarize the claims pertinent to the present moving defendants.

*First Claim*: against Richard and Gloria Manney, the Astor defendants, and Cohen, alleging (on the part of the non-Manney defendants) breaches of fiduciary duties owed to the debtor, causing depletion of the corporation's assets.

*Second Claim*: against Richard Manney, Gloria Manney, the Astor defendants, Cohen, and Citibank, alleging inducement of or participation in breaches of fiduciary duties owed by all defendants except Citibank, through their participation in the artwork transaction.

*Sixth Claim*: against the three Manneys, Citibank, and "John Doe" defendants, alleging constructive fraudulent conveyances, in that these defendants were "recipients of transfers of property or interests in property of Debtor" without fair consideration. *Id.* at ¶ 119.

*Seventh Claim*: against Richard Manney and Citibank, alleging intentional fraudulent conveyances of interests in the artwork.

*Eighth Claim*: against Citibank only, alleging an entitlement to avoid Citibank's security interest in the artwork.

*Ninth Claim*: against Gloria Manney, Patricia Manney, Citibank, and "John Doe" defendants, as transferees of corporate property fraudulently transferred.

*Fourteenth Claim*: against Cohen only, alleging breach of contract in recommending that Richard Manney engage in fraudulent transfers of the corporation's artwork "to evade creditors." *Id.*, ¶ 153.

*Fifteenth Claim*: against the Astor firm only, alleging breach of contract in recommending that Richard Manney engage in a fraudulent transfer of the corporation's artwork.

*Sixteenth Claim*: against the three Manneys, Citibank, the Astor defendants, Cohen, and "John Doe" defendants, alleging unjust enrichment.

Each of the three non-Manney defendants has moved separately to dismiss all the claims against it under Fed.R.Civ.P. 12(b)(6). In addition, the Astor defendants have moved to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) and on the ground of forum non conveniens. Together, the three motions raise a spectrum of challenges to plaintiff's several claims. After sifting through these issues, I have decided that: (1) this Court has properly exerted jurisdiction over the Astor defendants; (2)

claims six through nine are time-barred as to Citibank; and (3) plaintiff lacks standing to bring the other claims against Citibank, and all of the claims against Cohen and the Astor defendants. Therefore, for reasons that follow, I grant each of the three motions to dismiss.

## III.

■ The Astor defendants have moved to dismiss all claims against them for lack of personal jurisdiction or alternatively, on the ground of forum non conveniens. It is appropriate to consider these issues before evaluating the claims asserted against those defendants.

■ The Astor defendants are lawyers whose practice is centered in Philadelphia, Pennsylvania. They attack this Court's exercise of personal jurisdiction as statutorily impermissible under New York's long arm statute, and constitutionally impermissible under the Supreme Court's "minimum contacts" formulation. *See International Shoe v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Both contentions fail. In a federal question case such as this, in which the federal statute authorizes nationwide service of process, the federal court's jurisdiction "is coextensive with the boundaries of the United States." *Kingsepp v. Wesleyan University,* 763 F.Supp. 22, 24 (S.D.N.Y.1991) (citing *Mariash v. Morrill,* 496 F.2d 1138, 1143 (2d. Cir.1974)). State long arm statutes have no applicability, since nationwide service of process provisions provide a sufficient statutory basis for exerting in personam jurisdiction. *See Kingsepp* 763 F.Supp. at 24; *Greene v. Emersons Ltd.,* 86 F.R.D. 47, 65 (S.D.N.Y. 1980). In addition, "minimum contacts" with the forum state are not constitutionally mandated. *See Mariash,* 496 F.2d at 1143. The Due Process Clause requires only that the defendant have sufficient contacts with the **United States,** and that the service authorized by the statute be reasonably calculated to inform the defendant of the proceedings. *See id.; In re General American Communi-*

*cations Corp.,* 130 B.R. 136, 160 (S.D.N.Y. 1991); *In re First Hartford Corporation,* 63 B.R. 479 (Bankr.S.D.N.Y.1986)

The Bankruptcy Code provides for nationwide service of process. *See* F.R.B.P. § 7004.[2] Both Astor defendants were served in Pennsylvania pursuant to this provision. They do not dispute the validity of service of process, nor do they question their own contacts with the United States. They do, however, question the ongoing validity of *Mariash v. Morrill.* In *Mariash,* the Second Circuit rejected a claim identical to the one before this Court: that a defendant in a federal question case, served pursuant to a nationwide service of process provision, must have minimum contacts with the forum state to fall within the federal court's jurisdictional grasp. *See Mariash* at 1143. *Mariash,* the Astor defendants contend, was overruled *sub silentio* by the Supreme Court in *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

*Insurance Corp. of Ireland,* however, was not a federal question case, nor did it confront the constitutionality of nationwide service of process. Still, the defendants point to language in this opinion characterizing the personal jurisdiction requirement as one which is derived from the Due Process Clause and exists to protect individual liberty, as well as a footnote which reaffirms the "minimum contacts" formulation. *See id.* at 702–703, n. 10, 102 S.Ct. at 2105 n. 10. I fail to see how this language affects in any way the holding of *Mariash. Mariash* did not ignore the constitutional dimension of in personam jurisdiction. To the contrary, it explicitly identified the due process limitations on the exercise of personal jurisdiction pursuant to a nationwide service of process provision.

District Courts in this circuit have continued to follow the *Mariash* holding in spite of *Insurance Corp. of Ireland. See* decisions cited *supra* at 522; *U.S. v. International Brotherhood of Teamsters,* 708 F.Supp. 1388,

---

**2.** Rule 7004 provides, in pertinent part:

(d) Nationwide Service of Process

The summons and complaint and all other process except a subpoena may be served anywhere in the United States.

1403 (S.D.N.Y.1989). Without a more definitive statement from the Supreme Court, I do the same. Therefore, the Astor defendants' motion to dismiss for lack of personal jurisdiction is denied.

■ The Astor defendants have alternatively moved for dismissal on the ground of forum non conveniens. This point need not detain the Court long, given that these defendants have struggled to produce even a scintilla of evidence demonstrating the inappropriateness of this forum.

■ The Supreme Court has made it clear that a plaintiff's choice of forum should rarely be disturbed. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981). Dismissal of a case on forum non conveniens grounds is discretionary and should only be granted "when trial in the chosen forum would 'establish ... oppressiveness and vexation to a defendant ... *out of all proportion to plaintiff's convenience*' or when 'the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Piper Aircraft*, 454 U.S. at 241, 102 S.Ct. at 258 (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 831–32, 91 L.Ed. 1067 (1947)) (emphasis added). The Supreme Court has provided a list of private and public interest factors for district courts to consider in determining the validity of a forum non conveniens claim. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–9, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The factors pertaining to the litigants' private interests include:

> Relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; ... and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843. The relevant public interest factors are:

The local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws ...; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper Aircraft* at 241 n. 6, 102 S.Ct. at 258 n. 6 (citing and quoting *Gilbert* at 509, 67 S.Ct. at 843) (internal quotations marks omitted).

The Astor defendants have failed to demonstrate that any of these factors weigh convincingly in their favor. All they have done is point out that the Astor firm is a Pennsylvania partnership, and that a few witnesses and relevant documents may be located in Pennsylvania. Suffice it to say that modern means of transportation have made the 100-mile journey from Philadelphia to New York City reasonably routine. This is clearly not what the Supreme Court was referring to when it spoke of burdens that are "out of all proportion to plaintiff's convenience." To ignore this mandate and hold in plaintiff's favor would be tantamount to establishing a requirement that all parties, witnesses and documentary evidence be located in the forum state. This I decline to do. The Astor defendants' motion to dismiss on the ground of forum non conveniens is denied.

### IV.

As noted above, each of the three defendants has moved separately to dismiss all the claims against it under Rule 12(b)(6). Below, I group the many claims and consider their validity. Ultimately, I dismiss all of them, some on account of plaintiff's lack of standing, others because they were brought in an untimely fashion.

*Fraudulent Conveyance Claims Against Citibank*

■ Both plaintiff and Citibank seem to agree that claims six through nine against Citibank arise under section 544(b) of the Bankruptcy Code, a section that grants the trustee the power to avoid certain transfers of property.[3] While plaintiff at bar is not a

---

3. Section 544(b) provides:
 [A] trustee may avoid any transfer of an interest of the debtor in property or any obligation

incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section

bankruptcy trustee, the various avoidance remedies of the Bankruptcy Code may also be invoked by, or on behalf of, debtors-in-possession. *See In re Century Brass Products, Inc.*, 22 F.3d 37, 39 (2d. Cir.1994). Defendants at bar do not contend otherwise.

■ Citibank has moved to dismiss each of the four section 544 claims on the ground that they are untimely under the applicable statute of limitations. Claims arising under section 544 are subject to the two-year statute of limitations period set forth in section 546(a), which provides in pertinent part:

(a) An action or proceeding under Section 544, 545, 546, 547, 548, or 553 of this title may not be commenced after the earlier of:

(1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or

(2) the time the case is closed or dismissed.

11 U.S.C. § 546(a) (1994). The Court of Appeals for the Second Circuit has recently held that the two-year limitations period of section 546 applies to claims brought by a debtor-in-possession ("DIP") as well as those brought by a bankruptcy trustee. *See Century Brass*, 22 F.3d at 40. Because a DIP, unlike a trustee, is never formally "appointed," the two-year period begins to run "when the debtor files its petition and becomes a DIP under [Bankruptcy Code] § 1101." *See id.* at 40.

In the present case, an involuntary Chapter 7 petition was filed against the Mediators on July 2, 1991. On September 13, 1991, the proceedings were converted to Chapter 11. It was not until May 11, 1994, over two years after the conversion to Chapter 11, that plaintiff first named Citibank as a defendant in this action. Thus, contends Citibank, the four fraudulent transfer claims are time-barred under the Second Circuit's interpretation of § 546(a).

■ Plaintiff seeks to avoid the limitations bar by invoking the doctrine of equitable tolling in cases of fraudulent concealment. First conceived by the Supreme Court in 1874, this equitable shield provides two defenses against a statute of limitations attack. First, if a plaintiff can show that the alleged fraud was concealed by affirmative acts of the defendant, and that a suit was commenced within a reasonable time after plaintiff's discovery of the fraud, the statute of limitations will not bar relief. *See Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 347–48, 22 L.Ed. 636 (1874). Even in the absence of 'fraudulent concealment' by the defendant, if "the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part," the limitations period is tolled until the fraud is discovered. *Id.* at 348. Both prongs of the equitable tolling doctrine are "read into every federal statute of limitation." *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946).

The Second Circuit Court of Appeals has interpreted *Bailey* to make equitable tolling available to a plaintiff who establishes that: (1) the defendant concealed from plaintiff the existence of plaintiff's cause of action; (2) upon discovering the cause of action, plaintiff commenced an action within the time period prescribed by the applicable statute of limitations; and (3) plaintiff's ignorance of the cause of action was not the result of a lack of due diligence on his part. *See State of New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir.1988), *cert. denied* 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 460 (2d Cir.1974).[4]

502 of this title or that is not allowable only under section 502(e) of this title.

This section allows "the trustee to exercise whatever rights of avoidance any creditor holding an unsecured allowable claim could have exercised on his or her own behalf under applicable state or federal law." *4 Collier on Bankruptcy* ¶ 544.01 at 544–4 (15th ed. 1995).

**4.** There is bankruptcy court authority in this district for the proposition that on a motion to dismiss under Rule 12(b)(6), a plaintiff "need not prove her due diligence. The test is whether the facts alleged, if proven, would support any theory." *In re Ahead by a Length*, 100 B.R. 157, 164 (Bankr.S.D.N.Y.1989). As the discussion in text points out, *see infra* at pp. 525–26, my conclusion that plaintiff at bar cannot establish due diligence is based on evidentiary material outside the pleadings. But that material is found in the affidavit of David W. Dykhouse, Esq., counsel for the plaintiff; and accordingly no problem arises under the last sentence of Rule 12(b)(6).

A plaintiff "may prove the concealment element by showing either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing." *Hendrickson,* 840 F.2d at 1083. Plaintiff at bar invokes both prongs. First, plaintiff contends that Richard Manney affirmatively concealed the fraudulent nature of the artwork transaction by providing apparently legitimate but actually false explanations for the transaction in the corporate minutes. Second, plaintiff contends that a good faith claim against Citibank for a self-concealing fraud could not have been asserted until evidence implicating Citibank in the fraud was discovered.

Plaintiff's allegation of fraudulent concealment on the part of Manney, which must be taken as true for the purposes of this motion, does not preserve its fraudulent transfer claims against Citibank. Courts in this district have consistently held that the doctrine of fraudulent concealment only serves to toll the statute of limitations as to those defendants who actively participated in the concealment. *See Griffin v. McNiff,* 744 F.Supp. 1237, 1256 n. 20 (S.D.N.Y.1990); *O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222, 232 (S.D.N.Y.1989); *Greenfield v. Kanwit,* 87 F.R.D. 129, 132 (S.D.N.Y.1980). A plaintiff cannot point to the deceptive practices of one defendant, and demand equitable tolling as to all.

Although the Second Circuit has not spoken on this issue, and two isolated bankruptcy courts have held to the contrary, *see In re Lyons,* 130 B.R. 272, 281 (Bankr.N.D.Ill. 1991) ("For purposes of tolling the limitations period, the identity of the party responsible for concealing the fraud is not important.") and *In re Butcher,* 72 B.R. 247, 250 (Bankr. E.D.Tenn.1987) (same), I am persuaded by considerations of equity to follow the decisions in this district. The doctrine of fraudulent concealment is derived from a fundamental tenet of equity jurisprudence: one must not profit from his own wrong. *See Greenfield,* 87 F.R.D. at 129. Thus, "one who conceals facts to prevent the timely commencement of a lawsuit is estopped from pleading that defense." *Id.* However, to apply this doctrine to any and all defendants who played no part in the concealment is to invoke equity against innocent parties, and expand a limited exception to federal statutes of limitations beyond its intended scope. Plaintiff has not asserted that Citibank had any involvement in the alleged concealment, and therefore plaintiff's first basis for invoking equitable tolling must fail.

■ Even if plaintiff could somehow use the alleged fraudulent concealment by Manney as a basis for tolling the statute of limitations, the length of this tolling would not be sufficient to preserve its claims. It is safe to assume that plaintiff discovered the alleged fraudulent aspects of the artwork transfer by the date of its original complaint, in which it brought several claims against the Manneys relating to this transaction. This complaint was filed April 22, 1992 and Citibank was not sued until May 11, 1994, over two years later. Surely, any fraudulent concealment by Manney could not serve to toll the statute of limitations beyond the date that plaintiff discovered the concealed facts. Therefore, whatever the effect of Manney's alleged concealment, the tolling it provides would not be long enough to preserve plaintiff's fraudulent conveyance claims.

■ In the alternative, plaintiff alleges that notwithstanding its awareness of Manney's concealment, it could not have discovered, with the exercise of due diligence, Citibank's alleged knowing participation in the scheme until well within two years of the time it filed suit against Citibank. The crux of plaintiff's claim, then, is that the self-concealing nature of Citibank's conduct warrants application of equitable tolling.

■ To establish the propriety of equitable tolling based on self-concealing fraud, "plaintiff's due diligence in attempting to discover the fraud is imperative." *Lyons,* 130 B.R. 272. *See Hendrickson,* 840 F.2d at 1083, 1085. The facts of the present case, considered in the light most favorable to the plaintiff, paint a picture of a disregard of the statute for limitations, rather than a diligent search to uncover latent claims. Plaintiff sued the Manneys on April 22, 1992 for, *inter alia,* their involvement in the artwork trans-

fer. By plaintiff's own admission, it was aware at this time that Citibank had financed the transaction. *See* Dykhouse affidavit, ¶ 6. However, it did not subpoena documents pertaining to this transaction from Citibank until July 1, 1993, over one year after the original complaint was filed. In August of 1993—six weeks after service of the subpoena and one month before the statute of limitations expired—Citibank responded to the subpoena.

Plaintiff contends that the key documents implicating Citibank were hidden inside Citibank's voluminous response to the subpoena, and that one month was not enough time to discover these "smoking gun" documents. Regardless of the truth of this assertion, plaintiff provides no explanation for its one year and two month delay in serving the subpoena.[5] As it is, it took plaintiff nine months to sue Citibank after receiving Citibank's response. Therefore, had the subpoena been served promptly after the filing of the original complaint, plaintiff could have brought suit against Citibank in a timely fashion. Yet plaintiff waited and waited. Whatever due diligence may be, this is surely not it.

Accordingly, I find that equitable tolling is inappropriate here, and dismiss as untimely the four fraudulent conveyance claims against Citibank.

*Aiding and Abetting Breach of Fiduciary Duty Claims Against Citibank, Cohen, and the Astor Defendants*

█ Plaintiff has asserted claims against Citibank, Cohen, and the Astor defendants for aiding and abetting the Manneys' alleged breach of their fiduciary duties. Citibank has challenged plaintiff's standing to bring these claims, and both Cohen and the Astor defendants have adopted Citibank's arguments. Citibank's contention, reduced to its simplest form, is that the Mediators could not have brought this aiding and abetting

claim prepetition, and therefore, plaintiff has no standing to assert this claim postpetition, on debtor's behalf.

█ In every case, the issue of standing must be addressed at the outset. Standing is jurisdictional under Article III of the United States Constitution. *See Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471–76, 102 S.Ct. 752, 757–60, 70 L.Ed.2d 700 (1982). Accordingly, putative plaintiffs lacking standing are not entitled to have their claims litigated in Federal court.

█ The Bankruptcy Code places a trustee in the position of the bankrupt corporation, and grants the trustee standing to press any claims that accrued to the debtor prior to the filing of the bankruptcy petition. *See* 11 U.S.C. §§ 541, 542 (1988); *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 428–29, 92 S.Ct. 1678, 1685–86, 32 L.Ed.2d 195 (1972); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir.1991). However, "it is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *Wagoner*, 944 F.2d at 118. *See also In re Petroleum Corp.*, 417 F.2d 929, 934 (8th Cir.1969) ("Generally, the trustee of a bankrupt has no power to press the general claims of the bankrupt's creditors against third parties."). *Caplin* illustrates the principle by holding that a Chapter 10 reorganization trustee had no standing to sue an indenture trustee, who allegedly permitted a corporation to violate the indenture, on behalf of holders of debentures issued by the corporation. *See* 406 U.S. at 434, 92 S.Ct. at 1688. So if the corporation and a third party have acted jointly to defraud creditors, the trustee cannot sue the third party in the name of the corporation's creditors.[6]

---

**5.** In the Dykhouse affidavit, plaintiff implicitly attributes its delay in serving the subpoena to the fact that the case was not assigned to this court until April 22, 1993. *See* ¶ 8. I fail to see the relevance of this fact. Nothing prevented the Mediators or any other party from seeking discovery prior to the date this Court was assigned to the case. In the absence of an assigned trial

judge, applications are routinely made to the Part I judge.

**6.** It is worth noting that plaintiff, a creditors' committee, is not a trustee in bankruptcy. However, the committee is suing on behalf of the Mediators and in this sense, stands in a position analogous to that of a trustee. The parties to this motion have not attempted to distinguish any of

Plaintiff seeks to avoid this doctrine by styling its claim in fiduciary duty terms. Recognizing that fiduciary duty claims belong solely to the corporate entity, plaintiff contends that it has effectively stepped into the debtor's shoes in claiming that Citibank and others aided and abetted Manney in the breach of his corporate duties.

While plaintiff is correct in characterizing its claim as one that belongs to corporations generally, an issue remains as to whether the Mediators possessed any such claim prepetition. That is, in order to establish its standing, plaintiff must do more than simply assert a claim that is typically brought on a corporation's behalf. It must also demonstrate that this claim has a basis in fact, and would have survived a motion to dismiss had it been brought by the corporation prepetition. *See* 4 *Collier on Bankruptcy*, ¶ 541.04 at 541–22 (15th ed. 1995) (property comprising the estate is determined on the date the petition is filed); *Wagoner* at 119 ("To resolve whether the trustee has asserted claims that belong solely to [the debtor], we must determine what claims [the debtor] possessed against Shearman *before* [the debtor] went bankrupt." (emphasis in original)). If Mediators had no such claim at or before the time it filed for bankruptcy, then plaintiff cannot assert this claim on its behalf postpetition.

In arguing that Mediators had no viable, prepetition aiding and abetting claim against the named defendants, Citibank focuses on Richard Manney's dual status as corporate officer and sole shareholder of the debtor. Under Citibank's view, the corporation—owned exclusively by Richard Manney—is by definition not a victim of Manney's own alleged self-dealing. Rather, as Richard Manney's alter ego, it either participated in, or at the very least assented to, these transactions. Thus, it could not have used these allegedly fraudulent transactions as a basis for a fiduciary duty-style claim against third parties such as Citibank. At bottom, Citibank is arguing that plaintiff's claim really exists for the benefit of Mediators creditors, who were

allegedly defrauded by the concerted activities of Richard Manney, the corporation, and the various third party defendants. As in *Caplin,* such a claim by the trustee would be foreclosed.

The Second Circuit's recent opinion in *Shearson Lehman Hutton, Inc. v. Wagoner, supra,* provides convincing support for Citibank's view. In *Wagoner,* Herbert Kirschner, the sole stockholder, director and president of HMK Management Corporation ("HMK"), induced members of his church to extend loans to the corporation in exchange for worthless notes. *See Wagoner* at 116. He then used the proceeds of these loans to trade in HMK trading accounts at Shearson Lehman Hutton, Inc. ("Shearson"). *See id.* A number of these trades went sour, at which point Shearson investigated the nature of Kirschner's trading, realized that he was trading with loan proceeds in contravention of Connecticut law, and terminated his accounts. *See id.* at 116–17. Soon thereafter, HMK filed for bankruptcy. *See id.* at 117.

The trustee in bankruptcy filed suit against Shearson, alleging, *inter alia,* that Shearson had breached its fiduciary duty to HMK by facilitating and encouraging Kirschner's unlawful investment activity. *See id.* In assessing the exact nature of this claim, the Court of Appeals construed it as resting on an aiding and abetting theory: "the essence of all the formulations is that Shearson aided, abetted, and unduly influenced Kirschner in making bad trades that dissipated corporate funds." *Id.* at 119. The court then held that the trustee, standing in the shoes of the bankrupt corporation, had no standing to assert this claim because the corporation's sole stockholder and decision-maker had knowingly participated in these transactions. *See id.* at 120. In language that is facially dispositive of the issue at hand, the court stated, "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to the creditors, not to the guilty corporation." *Id.* Thus, the trustee in *Wagoner* was

---

the precedents on this rather formalistic basis, and have referred to the plaintiff as though it were a trustee. Given this, and seeing no functional difference between the creditors' commit-

tee and a bankruptcy trustee, I will treat the plaintiff as though it were a trustee for the purposes of deciding the standing issue.

barred from bringing the aiding and abetting claim.

Plaintiff seeks to distinguish *Wagoner* but in so doing, distorts the facts of that case. Under plaintiff's construction of the facts, HMK was an intended beneficiary of Kirschner's investment activities. Thus, as plaintiff would have it, the Second Circuit found that Kirschner was acting on behalf of the corporation in executing these trades, precluding any subsequent suit by the corporation when the trades resulted in significant losses. Here, however, plaintiff alleges that Manney dealt unfairly with corporation, and sought to enrich himself at the corporation's expense. From this, plaintiff asks the court to refrain from imputing Manney's conduct to the Mediators, a decision which would preserve the Mediators ability to sue.

Plaintiff's distinction might be persuasive if it were accurate. But the Second Circuit's decision to impute Kirschner's conduct to HMK simply did not rest on the notion that his activities were intended to benefit the corporation. The crux of the trustee's claim, as the Second Circuit saw it, was that Kirschner and Shearson had collaborated to injure the corporation by investing its funds improvidently. Thus, the only distinction between this case and *Wagoner* is the manner in which management allegedly injured the corporation—in *Wagoner*, Kirschner engaged in corporate waste whereas here, Manney allegedly engaged in self-dealing transactions. In both cases, the corporation as an entity was a victim. Notwithstanding this fact, the court in *Wagoner* held that the trustee had no right to bring an aiding and abetting claim against a third party on behalf of the victimized corporation, because the corporation's sole shareholder and decisionmaker had consented to and participated in the injurious conduct. Here, too, the corporation's sole shareholder has, through his participation, impliedly consented to the transactions that form the basis of plaintiff's aiding and abetting claim. Therefore, *Wagoner* seems to compel dismissal.

Plaintiff however, resists the notion that a corporation can consent to a self-dealing transaction and cites *In re Wedtech Securities Litigation,* 138 B.R. 5 (S.D.N.Y.1992), in support of its position. In *Wedtech,* Judge Lasker refused to apply the approach of *Wagoner* because the officers accused of wrongdoing were not the corporation's sole shareholders, and were allegedly not acting as agents of the corporation. *See* 138 B.R. at 8. Plaintiff picks up on this agency language, and claims that Manney could not have been acting as the corporation's agent in dealing adversely with it. However, Manney was the Mediators' sole shareholder and decisionmaker, and therefore whatever decisions he made were, by definition, authorized by, and made on behalf of, the corporation. Plaintiff fails to recognize that a corporation can consent to an officer's self-dealing transaction, and that Mediators did just that in this case.

Because Mediators, through its sole shareholder, consented to and participated in the transactions that form the basis of plaintiff's aiding and abetting claim, it could not have brought any such claim prepetition. Therefore, plaintiff has no standing to assert it on Mediators' behalf in this postpetition proceeding. Accordingly, I dismiss the aiding and abetting claim against Citibank, the Astor defendants, and Cohen.

*Breach of Fiduciary Duty Claims Against the Astor Defendants and Cohen*

 Plaintiff has brought separate claims against the Astor defendants and Cohen for breaching their independent fiduciary duties to the debtor corporation. Both sets of defendants have moved to dismiss these claims on various grounds. Without deciding any of these issues, I find that *Wagoner* is controlling, and dismiss these claims based on plaintiff's lack of standing.

In *Wagoner,* the plaintiff brought a breach of fiduciary duty claim against Shearson that is analogous to the one asserted here. Specifically, this claim alleged that "Shearson engaged in conduct intended to strip HMK of its assets and to make unsuitable investments and to improperly invest trust funds of clients of HMK and of HMK." 944 F.2d at 119. On its face, this claim implicated Shearson's own fiduciary obligations. However, in the eyes of the Second Circuit, the "essence" of plaintiff's cause of action was that Shearson had unlawfully assisted Kirschner in dis-

sipating corporate funds. *See id.* With this, the court dismissed the claim, resting its decision on the fact that HMK's sole shareholder and decisionmaker was aware of, and had actively forwarded, the investments. *See id.* at 120.

As in *Wagoner*, the root of plaintiff's fiduciary duty claims go to the Astor defendants' and Cohen's respective roles in helping Manney execute the artwork transaction. That this is so is patently clear from the language of the complaint. The cause of action alleging breach of fiduciary duty on the part of these two defendants is framed in the following terms:

> By advising Gloria and Richard Manney to transfer the corporate artwork from the debtor to themselves, and by participating in the structuring and execution of the June 1988 transactions, the Astor firm, Kaplan, and Cohen breached their fiduciary duties to the debtor.

Complaint ¶ 92. Clearly, whatever the precise duties of the Astor defendants and Cohen may be, this cause of action targets them for helping to defraud the corporation with the consent of management and ownership. As *Wagoner* and the discussion above makes clear, the corporation has no standing to bring such a claim, and therefore, neither does the plaintiff. As a result, the claims against Cohen and the Astor defendants for breaching their fiduciary duties are dismissed.

*Unjust Enrichment Claims Against Citibank, the Astor defendants, and Cohen*

■ Plaintiff has asserted unjust enrichment claims against Citibank, the Astor defendants and Cohen. The complaint does not allege specifically how these defendants were unjustly enriched. But the precise nature of these claims can be deduced from the facts as pleaded and the relief requested.

The only conceivable "enrichment" that the Astor defendants and Cohen received in connection with the Manneys' alleged fraudulent activities came from fees generated by their efforts on the artwork transaction. As for Citibank, plaintiff alleges that it too received fees for its participation in this transaction, as well as security interests in the artwork

and the Mediators bank account. However, the unjust enrichment claim against Citibank targets only the fees. On this claim, plaintiff seeks only restitution of funds, not a reconveyance of the interests in property.

Thus, the gravamen of the unjust enrichment claims against the three moving defendants is that their fees were earned unjustly because they compensated efforts on the part of these defendants to defraud the corporation.

■ It bears repeating that the case at bar is an action on behalf of the Mediators, "by and through its Official Committee of Unsecured Creditors." First Amended Complaint, introductory paragraph. This gives rise to two considerations. First, claims for unjust enrichment are equitable in nature. Second, the ability of the plaintiff Committee to assert unjust enrichment claims against these defendants depends upon whether the corporation itself could have asserted them prepetition. *See supra* at pp. 526–27.

As noted *supra*, *Wagoner* turned upon the issue of standing. The Second Circuit considered two claims asserted by the bankruptcy trustee against the defendant broker: one for churning, a claim that the court held the corporate debtor would have had prepetition standing to assert, *id.* at 119; and the other for aiding and abetting fraudulent dissipation of the debtor's assets, which, as noted *supra*, the court of appeals held the debtor could not have asserted, since "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation." *Id.* at 120 (citing cases). Thus, of the two claims presented in *Wagoner*, the trustee had standing to assert the first, but not the second.

Why did the Second Circuit in *Wagoner* condemn HMK, the debtor, as a "guilty corporation?" Because "HMK's sole stockholder and decisionmaker, Kirschner, not only knew of the bad investments, but actively forwarded them." *Id.* at 120. In the case at bar, the Mediators is the corporate analogue to HMK in *Wagoner*, and Manney is the individual analogue to Kirschner. The Mediators is a "guilty corporation" for precisely the same reason that HMK was.

That analysis, springing directly from plaintiff's allegations and theory of the case, is in my judgment fatal to these claims for unjust enrichment. Plaintiff's theory is that Manney engineered fraudulent transfers of the corporation's property, and that the Astor defendants, Cohen, and Citibank knowingly assisted him in that fraud, taking their rewards in the form of professional fees. The question arises: could the Mediators, controlled by Manney, who on plaintiff's theory was a fraudsman, have asserted an equitable claim for unjust enrichment to recover fees paid to this "guilty corporation's" accomplices in fraud for their parts in perpetrating that fraud?

The question must clearly be answered in the negative. One who seeks equity must do equity. The doctrine of "clean hands" is an established and salutary tenet of equity practice. On plaintiff's own theory of the case, the Mediators' hands are not clean, they are filthy with fraud.

 Accordingly, these are claims that the debtor could not have asserted prepetition, and plaintiff cannot assert them now. It matters not whether this conclusion is based on lack of standing, or on Rule 12(b)(6), which applies because the facts pleaded by plaintiff demonstrate that the unjust enrichment claims do not lie as a matter of law. The moving defendants are entitled

to dismissal of plaintiff's claims for unjust enrichment.[7]

*Breach of Contract Claims Against Cohen and the Astor Firm*

 Plaintiff has alleged that Cohen and the Astor firm breached contractual duties in their capacity as company accountants and company counsel, respectively. Each defendant has moved separately to dismiss these claims, raising various arguments for dismissal. I do not consider any of these arguments because I find that plaintiff has no standing to bring these claims, and dismiss them accordingly.

As with the other claims asserted against the three non-Manney defendants, plaintiff's standing to bring the breach of contract causes of action in this proceeding depends on whether the Mediators could have brought such claims against Cohen and the Astor firm prepetition. The precise nature of these claims is crucial to this determination. Specifically, plaintiff alleges that Cohen breached its contractual duty to perform "financial advisory services" for the debtor by recommending the artwork transaction. Along the same lines, plaintiff complains that the Astor firm's participation in the allegedly fraudulent transfer constitutes a breach of its contractual duties to act as company counsel and to specifically represent the Mediators in the transaction. The similarity between the

---

7. In the view I take of the case, I need not consider in detail the arguments some defendants make in support of dismissal, except to say that they are of doubtful validity.

Citibank argues that monetary restitution is legal in nature, and thus falls outside the equitable claim of unjust enrichment. But money damages are "equitable where they are restitutionary, such as in action[s] for disgorgement of improper profits." *Chauffeurs, Teamsters and Helpers Local v. Terry*, 494 U.S. 558, 570, 110 S.Ct. 1339, 1347, 108 L.Ed.2d 519 (1990) (interior citations and quotations omitted); *see also Merex A.G. v. Fairchild Weston Systems, Inc.*, 29 F.3d 821, 825 (2d Cir.1994), *cert. denied* —— U.S. ——, 115 S.Ct. 737, 130 L.Ed.2d 639 (1995) ("Restitution damages, for example, and money awarded incidental to the grant of equitable relief are not legal in nature."). Restitution is an appropriate remedy when a defendant's liability is predicated on unjust enrichment. *See Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 747 (D.C.Cir.), *cert. denied* —— U.S. ——, 116 S.Ct. 180, 133 L.Ed.2d 118 (1995).

Cohen argues that the claim is deficient because plaintiff does not allege that the services in question were not performed. But this equitable remedy sweeps more broadly than that. "[A] plaintiff seeking an equitable recovery based on unjust enrichment must first show that a benefit was conferred upon the defendant, and then show that between the two parties enrichment of the defendant was unjust." *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 263 (2d Cir.1984), *cert. denied* 469 U.S. 828, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984). On plaintiff's theory, Cohen was paid for assisting in defrauding the debtor. If, contrary to the facts alleged, the debtor had sufficiently clean hands to invoke the aid of equity, an unjust enrichment claim would lie.

The Astor defendants move to dismiss this claim for failure to plead fraud with the specificity required by Rule 9(b), Fed.R.Civ.P. They cite no case holding that a claim for unjust enrichment is subject to the heightened pleading requirements of the rule; in any event, taking the amended complaint as a whole, the allegations are sufficient.

two claims is self-evident. Rather than identifying specific results that the defendants failed to achieve, they focus on the defendants' more generalized contractual duties of good faith and fair dealing, duties that are implied into every contract. *See Components Direct, Inc. v. European American Bank & Trust Co.*, 175 A.D.2d 227, 572 N.Y.S.2d 359, 361 (2d Dep't 1991) (citing *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Pub. Co.*, 30 N.Y.2d 34, 330 N.Y.S.2d 329, 281 N.E.2d 142, *cert. denied* 409 U.S. 875, 93 S.Ct. 125, 34 L.Ed.2d 128 (1972)). Plaintiff characterizes its claims in this way, and I accept that characterization.

The Mediators could not have brought contract claims of this nature against Cohen or the Astor firm. Under plaintiff's version of the facts, Manney instigated the artwork transaction by soliciting advice from Cohen and the Astor defendants. Those defendants, understanding full well the implications of the transaction, provided the requested advice and actively participated in the structuring of the transaction. On an intuitive level, it is inconceivable that the Mediators could have maintained claims against Cohen and the Astor firm for breaching their contractual duties of good faith and fair dealing when the corporation's sole owner and decisionmaker solicited the advice comprising the alleged breach.

If anything, the participation of Cohen and the Astor defendants in the artwork transfer fulfilled their specific contractual obligations to the Mediators. The Mediators, acting through Richard Manney, specifically requested these two defendants to design a method of placing certain corporate assets beyond the reach of creditors. Taking the allegations in the complaint as true, Cohen and the Astor firm performed this contractual task with the zeal and vigor expected of lawyers and accounting advisors. The implied contractual duties of good faith and fair dealing, however broad they may be, are not breached when the specific services requested by contract are fully performed to the satisfaction of the promisee. Here the satisfied promisee and the corporation are one and the same. Therefore, the Mediators had no viable, prepetition breach of contract action against Cohen and the Astor firm, and plaintiff has no standing to bring this action on the Mediators' behalf in this forum.

■■■■ Accordingly, the breach of contract claims against Cohen and the Astor firm are dismissed.[8]

### V.

For the foregoing reasons, the motion of defendants Astor, Weiss, Kaplan & Rosenblum and Arthur R. Kaplan to dismiss the

8. While neither Cohen nor the Astor firm challenged plaintiff's standing to bring the breach of contract claims, they did raise other objections to these claims, none of which I find persuasive.

Cohen argues that in the context of attorney-client and accountant-client relationships, a client claim alleging a breach of the professional's implied contractual duties is untenable as a matter of law. This position, however, directly conflicts with established New York law. In *Santulli v. Englert, Reilly & McHugh*, 78 N.Y.2d 700, 579 N.Y.S.2d 324, 586 N.E.2d 1014 (1992), the New York Court of Appeals explicitly rejected the claim that an express promise to achieve a certain result is required to sustain a client's breach of contract action against his lawyer. *See id.* 579 N.Y.S.2d at 326–27, 586 N.E.2d at 1016–17. Rather, "a cause of action for breach of contract may be based on an implied promise to exercise due care in performing the services required by the contract." *Id.* at 326, 586 N.E.2d at 1016.

Pointing to a different portion of the *Santulli* opinion, Cohen also contends that plaintiff's contract claim is time-barred. *Santulli* held that the

applicable statute of limitations in a suit alleging pecuniary or proprietary harm is determined by the remedy sought. *See id.* at 328, 586 N.E.2d at 1018. Contrary to Cohen's assertion, the damages requested by plaintiff sound in contract, not tort, and therefore are timely under the six-year statute of limitations applicable to contract claims in New York. Cohen and the Astor firm are alleged to have breached their contractual duties by proffering a recommendation adverse to corporate interests. The only conceivable measure of contract damages is the one plaintiff suggests—the losses incurred by the Mediators in heeding this recommendation.

The Astor firm asserts that the complaint fails to sufficiently allege a breach of contractual duty on its part. This claim borders on the frivolous. The complaint states that the Astor firm was hired to represent the Mediators in the artwork transaction, and they instead recommended a transaction designed to defraud the corporation and its creditors. Without a doubt, this would constitute a breach of duty in the attorney-client context if the Mediators had not been a party to the fraud.

complaint for lack of personal jurisdiction and on the ground of forum non conveniens is denied.

The motions of defendants Citibank, N.A., Morris J. Cohen & Co., P.C., Astor, Weiss, Kaplan & Rosenblum, and Arthur R. Kaplan to dismiss the claims against them for plaintiff's failure to state a claim upon which relief can be granted, is granted.

There being no just reason to delay, the Clerk of the Court is directed to enter judgment in favor of these defendants and against plaintiff, dismissing the complaint against them with prejudice. *See* Rule 54(b), Fed.R.Civ.P.[9]

It is SO ORDERED.

---

9. The claims sought to be asserted against these defendants by a creditors' committee suing on behalf of the debtor corporation are dismissed with prejudice by this Federal court for the reasons stated in text. This opinion is not concerned with, and intimates no view upon, the ability of unsecured creditors of the Mediators to assert claims on their own behalf against one or more of the defendants in a state court.